Consolidated Appeals, Case Numbers 241475 and 2430058. Mr. Tarasov, can you hear us? Good morning. Good morning, everyone. Am I coming through okay? Yes, we can hear you. All right. Well, I first wanted to thank the court for allowing my appearance remotely. And then if I may start, I'd like to reserve two minutes for rebuttal as well. Sure. May it please the court, my name is Alexei Tarasov. I represent the Asamov family who are petitioners in this matter. The Board of Immigration Appeals issued two decisions that we challenge here today. First of all, a May 1, 2024 decision that refused to reissue a prior order despite defective service. And then an October 25, 2024 decision that denied reopening despite ineffective assistance of counsel. We respectfully urge this court to reverse those decisions. This appeal begins and ends with notice. Two features of the board's own file show that service never happened here. First and foremost, the mailing from the BIA that was addressed to petitioners was simply misaddressed. The decision went out in an envelope without the apartment number. It was stamped to be returned to sender with a notation, no apartment number. It came back to the board on January 9, 2024. This is classic defective notice. It was not reasonably calculated to reach anyone. And it defeats any presumption tied to routine mail. But didn't it go to counsel? Didn't notice go to counsel? Yes, if I may address that. So aside from a reference to a purported service on counsel in the board's May 1, 2024 decision, the respondent here has presented no proof that counsel was actually served via ECAS, which is the electronic system for serving decisions. When a noncitizen is represented, the board must serve his or her lawyer. That is the rule. Regulations actually use the word shall serve its decision on the attorney of record. And here we look to regulations found in 8 CFR 1003.1F, 1292.5 sub A, and then critically 1003.3 sub G, sub 6, sub Roman numeral 2, that says clearly EOIR will consider service completed when the electronic notification is delivered to the last email address on file provided by the user. I'd like to emphasize the word delivered. In this case, the electronic transmission was not delivered. The file contains no ECAS or EROB service entry. It has no certificate, no system law that would show that on December the 18th, the decision was served on counsel's registered email account. He did get it on January 9th, though, right? January 9th was an email notification that stated that some correspondence was returned to the board. We do not believe that there was any specificity about what type of correspondence was returned to the board. But the only contrary evidence that we have here is simply a boilerplate cover page, which is the cover page to that same misaddressed letter that never got to the petitioners, that says your attorney has been served. That's the only evidence here that service was accomplished. And here, boilerplate language is simply not proof. The objective documents all point one way, the board's mailing to the client. It failed. It was returned. And there's simply no trace of ECAS service on counsel. The matter of FBGM and GEMG, that is 29 INA 52, this is a board decision from 2025 that's presidential. The government cited that decision. There, the board said that presumption of delivery can arise for electronic notifications, but that presumption is weaker than for deliveries through U.S. mail. And it comports with common sense because emails, they can be filtered, they could be misrouted, or in some cases, they may not be sent at all in the first place. And when the agency invokes e-service, its proof should be more than just boilerplate language. It should be some type of an ECAS record that would show that the notice was uploaded and an email notification sent to the last address on file. That decision, that 2025 BIA decision, actually listed rebuttal factors, such as, for example, was the item uploaded and an email sent to counsel? Are there sworn statements based on personal knowledge that would attest to the non-receipt? Did counsel keep his email address updated? Did the opposing party receive the email? And are there other circumstances that would indicate non-receipt? Okay, so if we assume, because I'm watching the clock here, if we assume that counsel was ineffective by failing to check the docket, by failing to confirm where things were going, let's say that he got the notice was out there in the world and he should have checked to make sure, can you talk a little bit about the prejudice standard, the question of whether the standard that applies in many criminal contexts, which is the mere denial of judicial review is sufficient to constitute prejudice, why we should apply that here? Sure, and that is the heart of the dispute, is whether our clients, a family of five, suffered prejudice from their counsel's ineffectiveness. That's our argument in the alternative. So the BIA and the government take the position that the petitioners cannot show prejudice because they haven't proven that if they had filed a timely petition for review to this court, that the outcome in this court would likely have been different. This is too stringent a standard. It is simply impossible to prove or to show to the Board of Immigration Appeals that the Second Circuit would actually grant a petition or grant asylum in any particular case. And there are parallels with cases from the criminal context where ineffective assistance of counsel resulted in the denial of an appeal altogether, and the United States Supreme Court, for example, in the case of Penson v. Ohio, determined that that failure is presumptively prejudicial. This is a very similar situation, and while immigration proceedings are civil as opposed to criminal, due process protections do extend to immigration proceedings. And for these reasons, we respectfully ask the court to grant the petition for review here. Thank you very much. Thank you. We'll hear from the government. Ms. Kamani. Your Honors, may it please the Court, Neha Kamani for the Attorney General. Petitioner's counsel seems to focus on this courtesy copy, and also discusses at length the importance of this copy  the Board's non-delivery of the e-notification of the dismissal of its appeal. These are unexhausted and waived arguments. At no point in either of his two motions to reopen or in their opening brief before this Court do petitioners contest the Board's records. And the Board's records show that the appeal was dismissed on December 18th and electronic notification of that dismissal was sent to their counsel of record at 10 a.m. Petitioner's counsel's current arguments that the record doesn't show that it was delivered at 10 a.m., that there's nothing to show, e-delivery, are both unexhausted and waived. The Board is allowed to utilize its own records, as this case held in Ping Chen, which I believe Judge Wesley was part of the panel that issued that decision. The famous Ping Chen. And in Ping Chen, this Court says that the Board executing proper service is enough. That creates a presumption of delivery. Then the burden is on petitioner to show non-receipt. Here, that burden was not met. Their first motion to reopen, a one-page motion, simply stated they did not receive e-notification, that they finally discovered the Board had dismissed the appeal because DHS had contacted them about a separate matter, and no details were provided as to what efforts were taken, when they learned of this, nothing. And former counsel provided an illegible screenshot of his e-mail to say, didn't receive the e-notification of the dismissal. Nothing in that motion talks about the fact that he received the Immigration Justice Oral Decision that way, the transcript that way, the briefing scheduled before the Board that way, which allowed him to file a compliant brief, appeal brief. So petitioners have not met their heavy burden to reopen on the first motion to reopen, and the Board provided a rational explanation for denying that first motion to reopen, and therefore they did not abuse their discussion in denying that motion. As for the second motion, which claimed ineffective assistance of counsel due to the fact that their former counsel's deficient performance deprived them of their ability to file a timely petition before this Court, the Board acknowledged that petitioners, through current counsel, complied with the procedural aspects of matter of Lozada. They filed a bar complaint, they notified former counsel, so forth. But their four-page motion was devoid of prejudice. And as this Court has held in Scarlett and in multiple other cases, petitioners must show prejudice. And in Scarlett, this Court stated that petitioners must make a prima facie showing that but for counsel's ineffectiveness, he would have been eligible for the relief or protection sought and could have made a strong showing in support thereof. By the time petitioners filed their second motion to reopen before the Board, they had the Board's dismissal in front of them, so they knew the reasons why the Board agreed with the immigration judge in denying asylum and related protection. They had the Board's second – first denial of the – sorry, denial of their first motion to reopen. They had all these things before them, and in their second motion to reopen, there is no argument as for why or how they qualify for asylum and related protection. Even their brief before this Court, knowing that the Board denied their second motion to reopen, based on the fact that no prejudice was shown, that no grounds for relief were shown, in their opening brief before this Court, the last few pages conclusively argue that they're eligible for relief and protection. They make no arguments that would show that this Court would overturn the Board's original dismissal of their appeal. They do not show any error in the Board's finding that they waived review of the unable and unwilling finding, which is in and of itself dispositive of their application for asylum. And so they're basically asking for multiple bites at the apple without showing that they're eligible for what they speak. Thank you very much. Thank you, Your Honor. Mr. Tesserot. Thank you, Your Honor. The government's argument, I would submit, simply cannot overcome one simple truth, and that is that petitioners were never afforded their rightful day in court. We heard Respondents' Counsel cite heavily from the Ping Chen decision as if to say that actual receipt of the BIA's decision does not matter at all. While Ping Chen never licensed the BIA to simply ignore evidence of failed service, in our case, respectfully, I would argue that the record affirmatively shows that something was wrong with the mailing and the electronic notice to counsel. There is a sworn statement from Attorney Bond's paralegal that talks about the Bond Law Office's not receiving the electronic notice. That is in the record. There is the misaddressed envelope that was returned to the Board of Immigration Appeals. And we're not asking the courts to hold the BIA to an impossible standard. It's simply about requiring the BIA, when a significant error in notice occurs, to adhere to due process so that individuals do not suffer ruinous consequences without any recourse. I'll briefly touch on diligence because that was something that was raised by Ms. Kamani. So the BIA dismissed the family's appeal on December 18, 2023. They became aware of that dismissal on February 29. And within 19 days from that time frame, counsel first filed his emergency motion to reopen, which was on March 18. Then once I was engaged to represent the petitioners, a bar complaint was filed on May 17. We received acknowledgment as to the bar complaint's filing on August 22. And that is when we filed the Lozada-compliant motion to reopen on August 24. So there's documented diligence that's measured here in days and weeks, not months and years. All right. Thank you very much, Mr. Tarasov. Thank you. And thank you all. We'll reserve the decision and we'll hear argument.